IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION


FEDERAL DEPOSIT INSURANCE : 
CORPORATION, as receiver for :
HABERSHAM BANK, :
 :
   Plaintiff, :
 : CIVIL ACTION
v. : NO. 2:14-cv-00029-WCO
 :
DAVID D. STOVALL, EDWARD D. :
ARIAIL, BONNIE C. BOWLING, :
MICHAEL C. MARTIN, MICHAEL L. :
OWEN, M. EDWARD HOYLE, :
FRANK E. FELKER, and ANDREW :
COKER, :
 :
   Defendants. :


### ORDER

This is a case by the FDIC against several former directors and officers of

Habersham Bank.  The FDIC alleges that defendants ignored the bank's internal credit

policy, regulatory warnings, and banking regulations by approving nine transactions,

which later resulted in significant losses.

Plaintiff filed two motions to strike [21, 28] many of defendants' affirmative

defenses.[1]  Broadly speaking, the targeted defenses focus on causation and the FDIC's

---

[1] The eight defendants in this action respond to plaintiff's complaint through two answers.
One answer is by defendant Andrew Coker [20], and the other seven defendants jointly filed an

pre-receivership conduct.  Plaintiff also claims that the Federal Tort Claims Act ("FTCA") and Georgia Tort Claims Act ("GTCA") bar defendants' affirmative defenses to the extent that they are based on the performance of a "discretionary function" by a federal or state regulator.  Plaintiff further asks the court to recharacterize defendants' setoff/recoupment affirmative defense as a counterclaim and hold that defendants may not bring a counterclaim without exhausting their administrative remedies under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").  Next, plaintiff claims that defendants' exculpation affirmative defense under O.C.G.A. § 7-12-493(e) is legally deficient because the statute's liability restriction does not apply to suits other than shareholder derivative actions.  Finally, plaintiff also asks the court to strike portions of defendant Andrew Coker's answer that contain the objection that the document referenced in the allegation "speaks for itself."

Plaintiff's motions will be granted in part.  Several of defendants' affirmative defenses are actually specific denials of causation or proximate cause; the court will construe these "affirmative defenses" as specific denials and not strike them because they provide plaintiff with notice of how defendants intend to attack causation.

---

answer [17].  Because the questions presented by both motions to strike are substantively identical, the court will address each contention by its subject matter rather than examine each affirmative defense by number.

2

Defendants' causation based defenses remain intact to the extent that they raise issues of contributory negligence, comparative negligence, and nonparty fault.  Neither the FTCA nor GTCA has any bearing on defendants' affirmative defenses because both sovereign immunity statutes prohibit claims, not affirmative defenses.  Defendants' exculpation defense is defective because the FDIC is not a shareholder and this action is not a shareholder derivative suit.  Lastly, stating that the document "speaks for itself" is not a permissible response to an allegation; defendants must replead their answers.

## I. Motions to Strike Are Generally Disfavored

Rule 12(f) allows a court to prune "insufficient defense[s]" from a pleading. FED. R. CIV. P. 12(f).  Motions to strike are not favored in the federal rules. *Resolution Trust Corp. v. Youngblood*, 807 F. Supp. 765, 769 (N.D. Ga. 1992).  They should not be used to resolve disputed issues of fact or decide substantial questions of law.  *Id.*  However, clearly insufficient affirmative defenses "should be stricken to eliminate the unnecessary delay and expense of litigating [them]."  *Id.*

Affirmative defenses must be stated in "short and plain terms," but the standard for pleading affirmative defenses is not as stringent as pleading a claim for relief. FED. R. CIV. P. 8(b)(1)(A); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (holding that a complaint must "possess enough heft to 'sho[w] that the pleader

is entitled to relief'") (citation omitted). A party is not required to make a "plausibility" showing to successfully assert an affirmative defense; notice of the nature of the defense is sufficient. *See Floyd v. SunTrust Banks, Inc.*, 2011 U.S. Dist. LEXIS 65190, 2011 WL 22441744, at *7 (N.D. Ga. June 13, 2011).

## A. Distinguishing Between Affirmative Defenses, Claims, and Counterclaims

Resolving both motions requires an understanding of what is and is not an affirmative defense. An affirmative defense *does not* identify a defect in a plaintiff's *prima facie* case. For example, responding that plaintiff's complaint fails to state a claim upon which relief may be granted–the standard for dismissal under Rule 12(b)(6)–or that defendants did not owe plaintiff a duty does not raise an affirmative defense. *See In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 2010) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."). Some courts refer to defenses that identify a flaw in the plaintiff's *prima facie* case as "negative" defenses. *See, e.g.*, *Mister v. Dart*, 2014 U.S. Dist. LEXIS 87576, 2014 WL 2922830, at *2 (N.D. Ill. June 26, 2014) (citing *Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011)) ("[A] negative defense is an attack on a plaintiff's *prima facie* case.").

Instead, an affirmative defense is something that, if proven, will reduce or eliminate a plaintiff's recovery even if the plaintiff established a *prima facie* case.

4

*See, e.g.*, *Roberge v. Hannah Marine Corp.*, 124 F.3d 199, 199 (6th Cir. 1997) ("An affirmative defense . . . does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven.").   As a general rule, a party may easily distinguish between affirmative defenses and elements of a *prima facie* case by which party bears the burden of proof on the issue.  If a plaintiff bears the burden of proof, it's part of plaintiff's claim for relief.  If a defendant bears the burden of proof, it's an affirmative defense.

Affirmative defenses are also distinct from counterclaims.  *See* FED. R. CIV. P. 8(c)(2) (allowing the court to correct pleadings when a party mistakenly designates an affirmative defense as a counterclaim or vice versa).  The major difference between affirmative defenses and counterclaims is that "counterclaims are bases on which a jury can award damages while . . . affirmative defenses are merely ways in which [a] defendant can avoid liability."  *See Hellauer v. NAFCO Holding Co.*, 1998 U.S. Dist. LEXIS 12029, 1998 WL 472453, at *4 (E.D. Pa. July 28, 1998).  A defense is offered as some reason why the plaintiff's requested recovery should be diminished or eliminated, and a counterclaim is "essentially an action which asserts a right to payment."  *See Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264 (11th Cir. 1999) (quoting *Nat'l Union Fire Ins. v. City Sav.*, 28 F.3d 376, 393 (3d Cir. 1994) (internal quotation marks omitted)).

Imagine a lawsuit as a balance sheet.  A plaintiff's claim against a defendant is an asset.  Any affirmative defense by the defendant against the plaintiff essentially contests the existence or valuation of that asset.  A counterclaim by the defendant against the plaintiff is a liability.  Plaintiff's claim and defendant's counterclaim may result in a net recovery for plaintiff or for defendant, but the important thing is that the claim and counterclaim are different lines on the ledger.

## II. Issues Presented By Plaintiff's Motions to Strike

### A. Insufficiently Pled Defenses

Plaintiff complains that several of defendants' affirmative defenses should be stricken because they "consist only of conclusory statements without alleging any facts sufficient to provide [plaintiff] with fair notice of the bas[es] for those defenses." (Mot. Strike 13, ECF No. 21-1).  Plaintiff advocates applying the *Twombly*/*Iqbal* "plausibility" pleading standard to affirmative defenses and notes that some district courts in the Eleventh Circuit routinely do so.  *See, e.g.*, *Mid-Continent Cas. Co. v. Active Drwall S., Inc.*, 765 F. Supp. 2d 1360, 1362 (S.D. Fla. 2011).

District courts in the Eleventh Circuit differ on whether *Twombly* and *Iqbal* apply to affirmative defenses, and the Eleventh Circuit has not resolved the split at this time. *See Ramnarine v. CP RE Holdco 2009-1, LLC*, 2013 U.S. Dist. LEXIS 60009, 2013 WL 1788503, at *1-3 (S.D. Fla. April 26, 2013) (collecting cases).  After

reviewing cases on both sides of the issue and the Federal Rules of Civil Procedure, the court holds that the *Twombly/Iqbal* pleading standard does not apply to affirmative defenses.

The court bases its holding on the textual differences between claims and affirmative defenses. Rule 8 establishes pleading standards in federal court. Rule 8(a) establishes what constitutes a cognizable claim; the party seeking relief must provide (1) a "short and plain statement of the grounds for the court's jurisdiction," (2) a "short and plain statement *showing* that the pleader is entitled to relief," and (3) a demand for the relief sought. FED. R. CIV. P. 8(a) (emphasis added). The Rule sets a different standard for *responding* to a pleading.  In responding to a pleading, the responding party must "state *in short and plain terms* its defenses to each claim" and "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(b)(1)(A), (c)(1) (emphasis added).  By its plain text, the Rule does not require the responding party to make a "showing"; instead, the responding party meets minimum pleading standards by stating its defenses in short and plain terms.

There is a significant difference between "showing" and "stating."  "'To state' means '[t]o set forth in words; declare,' *The American Heritage Dictionary* 1694, (4th ed. 2000), while 'to show' refers to the practice of 'demonstrat[ing] by reason or procedure' . . . ."  *See Ramnarine*, 2013 WL 1788503, at *3.  Well-established

principles of statutory construction counsel that the court should not ascribe the same meaning to different language in the same Rule. *See EEOC v. Joe Ryan Enters., Inc.*, 281 F.R.D. 660, 663 (M.D. Ala. 2012) ("If the drafters of Rule 8 intended for defendants to plead affirmative defenses with the factual specificity required of complaints, they would have included the same language requiring a 'showing' of 'entitle[ment] to relief' in the subsections governing answers and affirmative defenses.").

The court also notes that practical considerations factor into its decision. A defendant must answer the complaint within twenty-one days. "Unlike plaintiffs, defendants do not have the luxury of prefiling investigations . . . . [R]equiring factual pleading of affirmative defenses is likely to accomplish little more than encouraging a flurry of motions to strike affirmative defenses." *See Floyd*, 2011 WL 2441744, at *8 (citation and internal quotation marks omitted). Additionally, to the extent that plaintiff wishes to flesh out defendants' affirmative defenses, it can do so by conferring with opposing counsel  during joint preliminary discovery discussions or as part of the Rule 26(f) conference. *See* FED. R. CIV. P. 26(f)(1-2); *see also* LR 16.1-3, NDGa.

The court holds that Rule 8 establishes a very low standard for adequately pleading affirmative defenses, and the Supreme Court's decisions in *Twombly* and

*Iqbal* do not alter that minimal standard.  Therefore, plaintiff's motions to strike defendants' affirmative defenses on the basis of vagueness or lack of adequate notice are denied.

### B. Pre-Receivership Activity, the "No Duty" Rule, and Causation

Plaintiff moves the court to strike defendants' affirmative defenses of failure to mitigate damages, reliance, consent/ratification, and causation to the extent that those defenses "are based on alleged pre-receivership conduct" of the FDIC and the Georgia Department of Banking and Finance.  (Mot. Strike 7, ECF No. 21-1). Plaintiff emphasizes that the FDIC functions in two discrete legal capacities: first, as an insurer of deposits and a regulator of member banks (the "corporate" side or FDIC-C), and, second, as a receiver of failed banks (the FDIC-R).  *See FDIC v. Skow* (*Skow I*), 2012 U.S. Dist. LEXIS 153604, 2012 WL 8503168, at *11 (N.D. Ga. Feb. 27, 2012).  Plaintiff asserts that, as a matter of law, defendants may not present affirmative defenses based on the pre-receivership conduct of the FDIC-C or the Georgia Banking Department.  (Mot. Strike 5-6, ECF No. 21-1).  Plaintiff highlights the *Skow* court's finding that former banking directors and officers could not maintain affirmative defenses for failure to mitigate, estoppel, and reliance based on "the pre-receivership conduct of the FDIC-C in its regulatory capacity."  *Skow I*, 2012 WL 8503168, at *11.

9

Defendants argue that plaintiff misreads the district court *Skow* decision and totally fails to address the circuit court's affirmance.  Defendants counter that *Skow* allowed those bank directors to maintain a causation defense based on the FDIC's pre-receivership conduct.  *See id.* at *13 (noting that the Eleventh Circuit's opinion did not determine "whether and to what extent Defendants can rely on the FDIC-C's pre-receivership conduct to rebut causation or to support an alternative theory of causation").  Defendants also claim that the circuit court eliminated the "no duty" rule as a prophylactic to asserted affirmative defenses when the circuit court affirmed the district court.  *See FDIC v. Skow*, 741 F.3d 1342, 1348-49 (11th Cir. 2013) (holding that the no duty rule did not bar affirmative defenses asserted against the FDIC because doing so would constitute an impermissible expansion of federal common law).

The court believes the parties misread *Skow*.  Their confusion stems from the curious practice of claiming "lack of causation" as an affirmative defense combined with the *Skow* court's allowing pre-receivership conduct to be relevant in some instances and not others based on the "dual capacities" doctrine.  A brief discussion of *Skow*'s three opinions is necessary.

### 1. *Skow I*: Partially Barring Affirmative Defenses Based on the FDIC's Dual Capacity and Allowing the Same Defenses Despite the No Duty Rule

In *Skow I*, the FDIC asked the court to strike the bank directors' affirmative defenses for failure to mitigate, reliance upon bank examiners, estoppel, and causation *in their entirety*. *Skow I*, 2012 WL 8503168, at *10. The court obliged in part. The court began by noting the well-established difference between the FDIC-C and the FDIC-R. *Id.* at *11 (citations omitted).[2] The court reiterated that "any affirmative defense based upon pre-receivership regulatory conduct must be asserted against the FDIC in its corporate capacity." *See id.* ("'Corporate FDIC is not liable for the wrongdoings by Receiver FDIC' and vice versa.") (citations and internal quotation marks omitted); *cf. Bullion Servs. Inc. v. Valley State Bank*, 50 F.3d 705, 709 (9th Cir. 1995) (holding that the FDIC's performance of "two different functions" and "wholly different interests" provide the FDIC-C and FDIC-R with separate removal rights). The court concluded that any affirmative defense based on pre-receivership activity

---

[2] Defendants claim that there "is only one FDIC," and this distinction "should not enjoy cognition in courts of law." (Resp. 5, ECF No. 30). This assertion is followed by a glib citation to the FDIC's website. (*Id.* at 5 n.2). The court accords more weight to FIRREA's text and the legion of cases recognizing the distinct functions, distinct interests, and distinct rights and liabilities of the FDIC's dual capacities. *See, e.g.*, *Miller v. FDIC*, 738 F.3d 836, 838 (7th Cir. 2013) (quoting *DeCell & Assocs. v. FDIC*, 36 F.3d 464, 469 (5th Cir. 1994) ("We emphasize the distinction between the FDIC as receiver and FDIC Corporate because "[i]t is well-settled that the FDIC operates in two separate and legally distinct capacities, each with very different responsibilities.")); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 783, 783 n.1 (11th Cir. 2005); *Bullion Servs., Inc.*, 50 F.3d at 709.

was defective because the FDIC-C "[was] *not a party before the court*."  *Skow I*, 2012 WL 8503168, at *11. (emphasis added).  *Skow I*'s holding on this point was not based on the no duty rule but rather on the FDIC-C's absence from the case and the "dual capacity" of the FDIC.  *See id.*

From there, the court went on to determine that defendants' affirmative defenses of failure to mitigate, estoppel, and reliance were not barred "to the extent that those defenses *are based on the post-receivership conduct by* [the FDIC] *in its capacity as receiver*" because the no duty rule could not "insulate the FDIC from affirmative defenses that are otherwise available under state law."  *See id.* at *12 (emphasis added); *see also O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994) (holding that the FDIC "steps into the shoes" of the failed institution and is subject to state law defenses because, under California law, "any defense good against the original party is good against the receiver") (citations and internal quotation marks omitted).

The court reached a slightly different ruling on the bank directors' causation defense because causation is not an affirmative defense.   *Skow I* correctly distinguished between "true" affirmative defenses and a nominal affirmative defense that is really a statement that the plaintiff will fail to meet an element of its *prima facie* case.  *See Skow I*, 2012 WL 8503168, at *13; *see also Gibbs Patrick Farms, Inc. v. Syngenta Seeds, Inc.*, 2008 U.S. Dist. LEXIS 23923, 2008 WL 822522, at *13 (M.D.

Ga. March 26, 2008) (recognizing that alternative theories of causation are not affirmative defenses; instead, "they are simply more specific denials of elements of Plaintiff's prima facie case."). The court found that "the causation 'defense' does not fit neatly into the dual capacity rule discussed above" and believed it remained unclear whether the bank directors could "rely on the FDIC-C's conduct to rebut causation or offer an alternative theory of causation." *See Skow I*, 2012 WL 8503168, at *13. Because of that ambiguity, the court declined to strike the bank directors' causation defense. *Id.*

### 2. *Skow II*: No Summary Judgment on Failure to Mitigate, Reliance, and Estoppel Defenses

Undeterred, the FDIC later moved for summary judgment on the bank directors' affirmative defenses of failure to mitigate, reliance, and estoppel. *FDIC v. Skow* (*Skow II*), 955 F. Supp. 2d 1357, 1368 (N.D. Ga. 2012), *aff'd*, *FDIC v. Skow* (*Skow III*), 741 F.3d 1342 (11th Cir. 2013). The FDIC claimed that the no duty rule barred these three defenses even if the defenses were based on *post-receivership conduct* by the FDIC-R. *Id.* The court thoroughly reviewed case law on federal common law and ultimately concluded that the no duty rule did not bar these three affirmative defenses. *See id.* at 1368-80 (reviewing pre- and post-FIRREA cases on the scope of the no duty rule).[3]

---

[3] The court does not discuss the no duty rule in depth because, as plaintiff acknowledges, the no duty rule does not prevent defendants from raising affirmative defenses. (Reply 7, ECF No. 31) (conceding that plaintiff does not argue "that there is some sort of [f]ederal common law immunity available to [plaintiff] (or to FDIC-C)").

### 3. *Skow III*: Affirming the District Court and Reinforcing the Inapplicability of the No Duty Rule

In *Skow III*, the circuit court affirmed the district court's decision in *Skow II* and wholly endorsed the district court's holding that the no duty rule did not bar affirmative defenses asserted against the FDIC.  *Skow III*, 741 F.3d at 1347-49.  On appeal, the FDIC challenged the district court's denial of its motion for partial summary judgment on defendants' affirmative defenses.  *Id.* at 1347. As the circuit court noted, the district court and the parties on appeal combined these three defenses into a single analysis of the no duty rule and accordingly limited its review to the applicability of the no duty rule to affirmative defenses.  *Id.* at 1347 n.9.

The circuit court reiterated that federal common law is "basically complete and closed"; thus, adding to it was inappropriate.   *See id.* at 1349.  After reviewing the applicable cases, the circuit court found that the FDIC failed "to demonstrate the real existence" of a federal common law rule "exempting the FDIC from *defenses* under state law."  *Id.* at 1348 (emphasis in original).

### 4. Impact on This Case

The net conclusion of these three decisions can be easily summarized. Defendants' affirmative defenses are barred to the extent that they are based on the conduct of the FDIC-C and other nonparty regulators because they are not parties to the case.  Those same affirmative defenses remain viable to the extent that they are

14

based on post-receivership conduct by the FDIC-R. *See id.* at 1348-49 (refusing the FDIC's invitation to "extend a purported federal common law rule to a new and significantly different context"). Defendants' causation and proximate cause defenses should not be stricken; instead, they should be construed as specific denials. Finally, defendants' contributory and comparative negligence affirmative defenses should remain intact.

### a. Failure to Mitigate, Reliance, and Consent/Ratification Defenses Based on the FDIC-R's Conduct Remain Intact

Defendants' affirmative defenses of failure to mitigate, reliance, and consent/ratification remain intact to the extent that they are premised on the FDIC-R's conduct. *Skow I* held that similar defenses could not be asserted against nonparties. *See Skow I*, 2012 WL 8503168, at *11 (holding that FDIC-C actions "cannot properly form the basis of affirmative defenses asserted against [the FDIC] in its receivership capacity"). The court agrees with *Skow I*'s reasoning.

These three affirmative defenses must be based on the actions of the plaintiff, not a nonparty. Defendants may present nonparty actions as a reason to excuse their alleged negligence, but these arguments are more properly labeled as attacks on the causation element of plaintiff's *prima facie* case or an indication of intent to allocate

15

nonparty fault under O.C.G.A. § 51-12-33 rather than separate affirmative defenses.[4] Therefore, plaintiff's motions to strike are granted to the extent that they seek to preclude defendant from asserting the affirmative defenses of failure to mitigate damages, reliance, and consent/ratification based on the conduct of any entity other than the FDIC-R.

### b. Causation, Contributory Negligence, Comparative Negligence, and Nonparty Fault

Here, the court must pause to emphasize the difference between causation, contributory negligence, comparative negligence, and nonparty fault.  As plaintiff correctly notes, a challenge to an element of a party's *prima facie* case is not an affirmative defense.  "An attack on a plaintiff's *prima facie* claim is a 'negative defense,' rather than an affirmative defense, which must plead 'matter that is not within the claimant's prima facie case.'"  *Riemer*, 274 F.R.D. 637 at 639 (citation omitted); *cf. Tomason v. Stanley*, 297 F.R.D. 541, 546 (S.D. Ga. 2014) (recognizing that a defendant's "affirmative defense" of failure to state a claim is not a defense).  Denying an element of the initial complaint is not an affirmative defense; it is a denial.

---

[4] By way of example, failure to mitigate damages is cognizable only against the claimant. *See* O.C.G.A. § 51-12-11 ("When a person is injured by the negligence of another, he must mitigate his damages as far as is practicable by the use of ordinary care and diligence.").  It is fair to say that a nonparty caused, contributed, or was at fault for the initial injury but legally incorrect to say that a nonparty failed to mitigate a claimant's injury.

But while causation is an element of a plaintiff's *prima facie* case, contributory negligence is an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1); *see also Garrett v. NationsBank*, 228 Ga. App. 114, 117, 491 S.E.2d 158 (1997) ("Contributory negligence is an affirmative defense, and the defendant has the burden of proof thereon, either at trial or summary judgment.") (citations omitted).  The doctrine has two separate and distinct facets–both of which *completely bar* a plaintiff's right to recover.  *See Garrett*, 228 Ga. App. at 118.  First, the plaintiff "must at all times use ordinary care for his own safety; that is, he must not by his own negligence (or consent) proximately cause his own injuries; and second, the plaintiff must use ordinary care to avoid the consequences of the defendant's negligence when it is apparent or when in the exercise of ordinary care it should become apparent."  *See id.* (quoting *Whatley v. Henry*, 65 Ga. App. 668, 673-74, 16 S.E.2d 214 (1941)).

Comparative negligence is a relative of contributory negligence.  Under Georgia law, comparative negligence operates to *reduce* the *amount* of plaintiff's recovery in proportion to plaintiff's negligence and will–if plaintiff is sufficiently negligent–bar plaintiff's ability to recover.  *See id.*; *see also* O.C.G.A. § 51-12-33(g).

Georgia has, by statute, extended comparative negligence to include nonparty fault; O.C.G.A. § 51-12-33 allows the trier of fact to allocate "fault" to a nonparty for the purposes of apportioning damages among the named defendants.  Assigning fault

17

to a nonparty does not put the nonparty on the hook for damages; instead, the assessment is used only in the determination of the percentage of fault of named parties. *See* O.C.G.A. § 51-12-33(f)(2) (stating that "findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action"). Allocating fault to a nonparty is also considered an affirmative defense. *See Union Carbide Corp. v. Fields*, 315 Ga. App. 554, 556, 726 S.E.2d 521 (2012), *rev'd in part by* 293 Ga. 499, 748 S.E.2d 407 (2013), *remanded to* 758 S.E.2d 335 (Ga. Ct. App. 2014); *see also Argonaut Midwest Ins. Co. v. McNeilus Trick and Mfg., Inc.*, 2013 U.S. Dist. LEXIS 17203, 2013 WL 504897, at *3 (N.D. Ga. Feb. 8, 2013)

Therefore, defendants' causation-related affirmative defenses are construed as specific denials to the extent that they attack an element of plaintiff's *prima facie* case. These same responses are proper affirmative defenses to the extent that they provide plaintiff notice of defendants' intent to raise contributory negligence, comparative negligence, and nonparty fault as affirmative defenses.[5] Because the parties blended causation, contributory negligence, comparative negligence, and nonparty fault, the

---

[5] Plaintiff argues that contributory and comparative negligence are not affirmative defenses listed in O.C.G.A. § 9-11-8(c), so they do not need to be presented in defendants' answers. This is of no consequence. Georgia law provides the substance of the affirmative defense, but the requirement to plead an affirmative defense is a procedural rule governed by the Federal Rules of Civil Procedure. *Cf. Glass Containers Corp. v. Miller Brewing Co.*, 643 F.2d 308, 313 (5th Cir. 1981) (holding that pleading affirmative defenses is a procedural rule, so the Federal Rules of Civil Procedure dictate the method for raising affirmative defenses in a diversity action).

18

court cannot determine whether plaintiff seeks to strike defendants' causation related affirmative defenses.

Assuming that plaintiff did seek to strike all causation related affirmative defenses, the court will not do so. The contributory negligence, comparative negligence, and nonparty fault issues are substantial and unsuitable to resolution via a motion to strike. The questions presented by these three affirmative defenses are far from clear and certainly qualify as "unsettled questions of law" that should be examined later in the proceedings. *See Resolution Trust Corp. v. Youngblood*, 807 F. Supp. 765, 769 (N.D. Ga. 1992) (citations omitted).

### 5. Recharacterizing the No Duty Rule as Discretionary Conduct Protected by Sovereign Immunity is Unavailing

Plaintiff next claims that defendants' affirmative defenses that reference pre- and post-receivership activity by the FDIC and other regulators are barred by the Federal Tort Claims Act ("FTCA") and Georgia Tort Claims Act ("GTCA"). This argument can be swiftly rejected.

The FTCA bars *claims* against federal entities based on those entities' performance of a "discretionary function." *See* 28 U.S.C. § 2680(a). The operative word is "claims." Suing the FDIC is not the same thing as asserting defenses against the FDIC. *See FDIC v. Gladstone*, 44 F. Supp. 2d 81, 88 (D. Mass. 1999); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 392-95

19

(3d Cir. 1994) (interpreting FIRREA and concluding that "it is plain enough that a defense or an affirmative defense is neither an 'action' nor a 'claim,' but rather is a *response* to an action or a claim"); *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (defining an affirmative defense as "any matter that does not tend to controvert the opposing party's prima facie case") (citations and internal quotation marks omitted); *compare* FED. R. CIV. P. 8(a), *with* FED. R. CIV. P. 8(c) (establishing different pleading standards for "claims" and "affirmative defenses").  Affirmative defenses are not claims, so they are not barred by the FTCA.[6]

Plaintiff's submitted cases to the contrary are either inapposite to the Eleventh Circuit's ruling in *Skow III* or fail to recognize the distinction between claims and

---

[6] The court is aware that another district court recently faced the same issue.  *FDIC v. Johnson*. 2014 U.S. Dist. LEXIS 108221, 2014 WL 3845406 (D. Nev. Aug. 5, 2014).  The *Johnson* court found that the FTCA did not bar affirmative defenses against the FDIC-R based on the difference between claims and affirmative defenses.  *Id.* at *4-9.  The court also determined that state law did not bar affirmative defenses under the FTCA's discretionary function exception.  *Id.* at *8-9.

The court endorses *Johnson*'s recognition of the differences between claims and counterclaims but respectfully disagrees with *Johnson*'s second reason for allowing affirmative defenses against the FDIC.  First, state law has no place in determining whether the FTCA extends to affirmative defenses against the United States.  *See Denson v. United States*, 574 F.3d 1318, 1352 (11th Cir. 2009) ("The sovereign is sovereign over questions of sovereign immunity.") (Carnes, J., concurring); *see also Bailey v. United States*, 623 F.3d 855, 861 n.2 (9th Cir. 2010) ("State tort law duties are not relevant to the determination whether [sic] the discretionary function exception applies," and "[i]t is only after we determine as a matter of federal law that the discretionary exception does not apply that we then evaluate whether the government can be held liable under the laws of the state where the act or omission took place.").  Second, it is questionable whether the FDIC-R could even raise an FTCA defense because "the FDIC is not the United States" and even if it were there is no reason to assume the FDIC-R is "asserting its *own* rights rather than, as receiver, the rights of [Habersham Bank]."  *See O'Melveny & Myers*, 512 U.S. at 86.

affirmative defenses.  For example, in *FDIC v. Bierman*, the Seventh Circuit did not allow bank directors to assert the affirmative defenses of contributory negligence and failure to mitigate damages based on the no duty rule and the discretionary exception to the FTCA.  2 F.3d 1424 (7th Cir. 1993).  First, as discussed above, *Skow III* clearly holds that the no duty rule does not bar affirmative defenses against the FDIC for post-receivership activity.  *See Skow III*, 741 F.3d at 1348-49.  Second, the *Bierman* court failed to distinguish between claims and affirmative defenses.  By its terms, the FTCA applies to "claims," not affirmative defenses, and this court seriously doubts that any portion of *Bierman* remains relevant after the Supreme Court's decision in *O'Melveny* and the passage of FIRREA.[7]  *See FDIC v. Giannoulias*, 2014 U.S. Dist. LEXIS 93630, 2014 WL 3376892, at *4-5 (N.D. Ill. July 10, 2014) (noting that *Bierman* did not recognize this distinction, "assumed that the FTCA applied," and relied on cases that conflated affirmative defenses and counterclaims).

Assume that defendants actually tried to bring a freestanding "claim" for failure to mitigate damages.  Defendants would essentially be arguing that the FDIC (standing in the shoes of Habersham Bank), by its own actions, damaged *itself* by failing to use ordinary care and diligence.  Defendants would, of course, not be

---

[7] *Bierman* was decided after the passage of FIRREA, and neither party advocated for the retroactive application of FIRREA.  *See Bierman*, 2 F.3d at 1426 n.2.

entitled to any damages for prevailing on their "claim" because their remedy would be a reduction in damages for a non-existent claim.  The illustration, silly as it may seem, succinctly demonstrates that defendants' affirmative defenses do not seek recovery *from* the FDIC but rather to *reduce or eliminate* a recovery that the FDIC would otherwise be entitled to receive.

Roughly equivalent logic operates to bar the FDIC's attempts to shield the Georgia Banking Department from fault.  O.C.G.A. § 50-21-24(11) proclaims that "the state shall have no liability from losses resulting from . . . [f]inancing regulatory activities, including, but not limited to, examinations, inspections, audits, or other financial oversight activities."  Loss is defined as "personal injury; disease, death; damage to tangible property, including lost wages and economic loss . . . and any other element of *actual damages recoverable in actions for negligence*."  O.C.G.A. § 50-21-22(3).  As discussed above, defendants do not seek damages from any regulator–the Georgia Banking Department included–but instead seek to *reduce* their potential liability.  Because defendants' affirmative defenses do not seek to impose liability for a "loss" on the state, plaintiff's GTCA argument fails.

**C. Other Defenses**

### 1.  Recoupment/Setoff Defense is Barred By FIRREA's Administrative Claims Process

Plaintiff also asks the court to recharacterize defendants' recoupment/setoff defense as a counterclaim and find that any asserted counterclaim is barred by FIRREA's administrative claims process.  The court will do so.

Setoff and recoupment are not affirmative defenses; they are counterclaims. *See Baxter v. Fairfield Fin. Servs., Inc.*, 307 Ga. App. 286, 295, 704 S.E.2d 324 (2010) (quoting *Hill v. Green Tree Servicing*, 280 Ga. App. 735, 737, 557 S.E.2d 20 (2001)) ("Under Georgia law, both setoff and recoupment are considered counterclaims.").  Because setoff and recoupment are counterclaims, they are claims that are subject to the FIRREA administrative claims process.  *See Interface Kanner, LLC v. JP Morgan Chase Bank, N.A.*, 704 F.3d 927, 934 (11th Cir. 2013).  If the claimant has not gone through the FIRREA administrative claims process, the court lacks subject matter jurisdiction over the claimant's claim.  *See id.* (citing 12 U.S.C. § 1821(d)(13)(D)(i-ii).

Although FIRREA does not provide "an explicit mandate for exhaustion of administrative remedies," the Eleventh Circuit has construed the administrative process provisions in FIRREA to impose an exhaustion requirement.  *See id.* (quoting *FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1294 (11th Cir. 1998)).  Affirmative

defenses are not subject to this exhaustion requirement, but "counterclaims . . . fall under § 1821(d)(13)(D)'s jurisdictional bar because a counterclaim is a 'claim.'" *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263-64 (11th Cir. 1999) (quoting *Nat'l Union Fire Ins. v. City Sav.*, 28 F.3d 376, 393-94 (3d Cir. 1994)).

Because "FIRREA contains no provision granting federal jurisdiction to claims filed after a receiver is appointed but before administrative exhaustion" and because defendants have not submitted a claim against the FDIC through the FIRREA administrative claims process, this court lacks jurisdiction to adjudicate defendants' counterclaims against the FDIC. *See Interface Kanner, LLC*, 704 F.3d at 934. The court lacks subject matter jurisdiction over defendants' counterclaim for setoff/recoupment until defendants have exhausted their administrative remedies. Therefore, defendants' setoff/recoupment affirmative defense, properly recast as a counterclaim, will be dismissed without prejudice due to defendants' failure to exhaust the applicable administrative remedies.[8]

---

[8] The court is aware that other courts have stayed–rather than dismissed–counterclaims that had not gone through the administrative claims process. *See, e.g.*, *Coston v. Gold Coast Graphics, Inc.*, 782 F. Supp. 1532, 1535-36 (S.D. Fla. 1992). A stay, however, is inappropriate because defendants pled their counterclaims with the level of specificity befitting an affirmative defense. Since the court would require defendants to replead their counterclaims to conform with *Twombly* and *Iqbal*, the court finds that the better course of action is for defendants' counterclaims to be dismissed without prejudice.

## 2. Defendants Are Barred From Presenting an Exculpation Defense Under O.C.G.A. § 7-1-493(e)

Plaintiff next asks the court to strike defendants' affirmative defense for exculpation under O.C.G.A. § 7-1-493(e).  Plaintiff notes that *Skow I* addressed the same issue and found that the exculpatory clause in § 7-1-493(e) did not apply to actions by the FDIC against bank directors and officers.  The court again adopts the *Skow* court's logic.

O.C.G.A. § 7-1-493 creates a right of action against bank directors and officers. The action may be brought by three distinct groups of claimants: (1) the bank, (2) a receiver, trustee in bankruptcy, officer, director, or judgment creditor thereof, and (3) a shareholder in a derivative action.  *See* O.C.G.A. § 7-1-493(b).  A bank, however, may partially reduce its directors' liability under this section by adopting an amendment to its articles of incorporation.  The amendment can reduce or entirely eliminate director liability "*to the shareholders of the bank*."  O.C.G.A. § 7-1-493(e).

Plainly, this is not a derivative suit, and the FDIC-R should be classified as a receiver.  Because the liability reducing amendment in § 7-1-493(e) alters only director liability to the bank's shareholders, the exculpation amendment would have no effect on director liability to the bank or a receiver.  This outcome is consistent with *Skow I* and the statute's plain language.

Defendants' arguments to the contrary are entirely unconvincing.  Defendants claim that *Skow I* decided that § 7-1-493(e) could not bar gross negligence claims, but that the decision did not determine whether the provision also barred ordinary negligence claims.  Defendants baldly state that the applicability of the exculpation provision is "unsettled" and raises a "disputed and substantial question of law that does not prejudice the FDIC."  (Resp. Mot. Strike 22-23, ECF No. 30).

But the degree of negligence alleged is irrelevant under the statute; what matters is the procedural character of the claim.  By the statute's plain language, directors may be immunized from shareholder derivative suits, but bank directors cannot receive equivalent immunity from suits by the bank or receiver.  *Skow I* limited ruling on the applicability of this affirmative defense to the gross negligence claim because the court disposed of plaintiff's ordinary negligence claim by invoking the business judgment rule.  *See Skow I*, 2012 WL 8503168, at *8.  Naturally, the *Skow* court did not need to determine the applicability of an affirmative defense to a claim that it dismissed on other grounds.  Nonetheless, the procedural differences between *Skow* and this case do not change the applicability of *Skow*'s logic to this one.  Defendants provided no explanation for how this statute could conceivably be read to immunize directors from suits by the FDIC or how the *Skow* court erred in its interpretation of the statute.  The court is equally unable to detect a flaw in the *Skow* court's reasoning.

This court also finds that § 7-1-493(e) does not immunize bank directors from suits by plaintiff because plaintiff is not prosecuting a shareholder derivative suit. Plaintiff's motions to strike defendants' exculpation defenses are granted.

## III. "The Document Speaks for Itself"

A pox upon these words. They have no place in a proper response–whether it be made in response to discovery requests or an allegation in a complaint or counterclaim.

More than half of defendants' responses to plaintiff's complaint begin with the statement that "[t]he [referenced documents] are written documents that speak for themselves." (*See generally* Stovall Answer, ECF No. 17, Coker Answer, ECF No. 20). Defendants claim that their responses are legally sufficient. Defendants emphasize that each response also contains a denial of the allegation or a statement that defendants lack sufficient knowledge or information to form a belief about the truth of the allegation, so their responses are permissible. (Resp. Mot. Strike 24-25, ECF No. 30). The court disagrees.

There are only three appropriate responses to a pleading: an admission, a denial, or a statement that the party lacks knowledge or information sufficient to form a belief about the truth of the allegation. *See* FED. R. CIV. P. 8(b)(1)(B), (b)(5).

Stating that a document "speaks for itself" is nonsensical and completely contrary to the Federal Rules of Civil Procedure.  "A response that fails to answer an allegation because the allegation 'states a legal conclusion' or because the document 'speaks for itself['] is impermissible under the plain language of Rule 8(b)."  *Gomez v. United States*, 2010 U.S. Dist. LEXIS 108187, 2010 WL 3834211, at *1 (S.D. Fla. Sept. 28, 2010).

To be sure, defendants' response *does* include a subsequent denial "as to the truth of the remaining allegations," but the initial statement that the document speaks for itself obscures what, if any, portion of the allegation the denial covers.  This is more than a pedantic qualm; including the statement that the document speaks for itself can have significant consequences.  Like general objections to discovery requests, the prefatory non-response obscures the value of the denial or admission. It creates "a real question about whether Defendants' denials were impermissibly based on the belief that . . . the documents speak for themselves."  *Do It Best Corp. v. Heinen Hardware, LLC*, 2013 U.S. Dist. LEXIS 94567, 2013 WL 3421924, at *5 (N.D. Ind. July 8, 2013).

For example, paragraph 82 of the complaint alleges that "[a]ll loans to insiders ['all required director and executive officer loans'] required full Board approval." (Compl. ¶ 82, ECF No. 1).  Defendants' response is that the document speaks for

itself, any allegation inconsistent with the document is denied, and that defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.  (Answer ¶ 82, ECF No. 17, 20).

What document speaks for itself?  This allegation does not reference a document, although it is listed under the subtitle "Habersham's Loan Policy and Procedures."  Does the implicit reference to a document (or the fact that some document may contain this statement) preclude a meaningful response?  Beyond that, what allegations exist other than "all loans to insiders required full Board approval?"  Are defendants really so lacking in information regarding their board duties that they are unsure whether they could engage in insider transactions?  Without the "document speaks for itself" line, this response could have some actual value and let plaintiff know where defendants stand.  With the "document speaks for itself" line, the response is an amorphous nothing.

The practical implication of these pseudo-responses is that a party must request much broader discovery because the opposing party did not really admit anything.  Not only does this needlessly increase the costs of litigation–something that this court strives to avoid–but the discovery process may devolve into a battle royale of broad requests against worthless responses.  At this juncture, the "document speaks for itself" line may reappear as a faux-answer to a request for admission or interrogatory

where it will be equally unwelcome.  *See, e.g.*, *Lewis v. Michaels Stores, Inc.*, 2007 U.S. Dist. LEXIS 50506 n.1 ("The tautological 'objection' that the finder of fact can read the document for itself to see if the quote is accurate is not a legitimate objection but an evasion of the responsibility to either admit or deny a request for admission."). Two things are certain: the exercise is a waste of the parties' money and scarce judicial resources.

No reasonable party would deny an allegation describing an event on the basis that "the events described in paragraph [x] speak for themselves."[9]  There is no reason to change that eminently reasonable position because a fact is or may have been described in a document rather than described in the abstract.  "This [c]ourt has been attempting to listen to such written materials for years (in the forlorn hope that one will indeed give voice)–but until some such writing does break its silence, this [c]ourt will continue to require pleaders to employ one of the three alternatives that *are* permitted by Rule 8(b) . . . ."  *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001).

---

[9] Though, at times, it appears that defendants do exactly that.  For example, paragraph 174 alleges that no development occurred during the term of one loan and that "[b]y the maturity date, the bank had disbursed the entire $250,000 to the borrower to make the interest payments, leaving no funds to pay any more interest."  (Compl. ¶ 174, ECF No. 1).  Defendants responded that the loan documents speak for themselves even though the allegations do not directly reference a document.

The court notes that defendant Stovall's answer is also replete with statements that "the document speaks for itself," but plaintiff did not move to strike any portion of Stovall's answer.  Nonetheless, the court will direct Stovall to amend his answer to promote symmetrical treatment of the same deficiency.  What's good for the goose is good for the gander.  Defendants are **DIRECTED** to file amended answers that comply with Rule 8(b) no later than twenty-one days from the date of this order.

## IV. Conclusion

Plaintiff's Motions to Strike [21, 28] are **GRANTED in part**.  With respect to defendant Coker's answer [20]:

- Defendant's affirmative defenses are construed as specific denials to the extent that they contest causation and affirmative defenses to the extent that they raise contributory negligence, comparative negligence, and nonparty fault as bars to plaintiff's claims.
- Defendant's twelfth affirmative defense is hereby **STRICKEN** to the extent that it alleges a nonparty's failure to mitigate damages.
- Defendant's twenty-third affirmative defense for recoupment/setoff is properly labeled as a counterclaim.  Defendant's counterclaim for recoupment/setoff is hereby **DISMISSED without prejudice** because defendant failed to exhaust his administrative remedies.
- Defendant's nineteenth and twenty-sixth affirmative defenses are hereby **STRICKEN** because § 7-1-493(e) applies only to shareholder derivative suits against bank directors and officers.
- Defendant is **DIRECTED** to file an amended answer that complies with Rule 8 no later than twenty-one days from the date of this order.  Failure to do so may result in the court's striking defendant's answer in its entirety.
- Plaintiff's motion [28] is **DENIED** in all other respects.

With respect to the remaining defendants' answer [17]:

- Defendants' affirmative defenses are construed as specific denials to the extent that they contest causation and affirmative defenses to the extent that they raise contributory negligence, comparative negligence and nonparty fault as bars to plaintiff's claims.
- Defendants' thirteenth affirmative defense is hereby **STRICKEN** to the extent that it alleges a nonparty's failure to mitigate damages.
- Defendants' twenty-second affirmative defense for recoupment/setoff is properly labeled as a counterclaim.  Defendants' counterclaim for recoupment/setoff is hereby **DISMISSED without prejudice** because defendants failed to exhaust their administrative remedies.
- Defendants' twenty-third affirmative defense is hereby **STRICKEN** because § 7-1-493(e) applies only to shareholder derivative suits against bank directors and officers.
- Defendants are **DIRECTED** to file an amended answer that complies with Rule 8 no later than twenty-one days from the date of this order. Failure to do so may result in the court's striking defendants' answer in its entirety.
- Plaintiff's motion [21] is **DENIED** in all other respects.

IT IS SO ORDERED, this 2nd day of October, 2014.


s/*William C. O'Kelley*
William C. O'Kelley
Senior United States District Judge